UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TOMMY T. BUSH, JR., and
MARION PATTILLO,

        Plaintiffs,

    v.                                 Case No. 22-cv-0697-bhl

MILWAUKEE COUNTY,

        Defendant.

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      Plaintiffs Tommy T. Bush and Marion Pattillo, who were incarcerated at the Milwaukee County Jail when they filed their complaint, are proceeding on claims that Defendant Milwaukee County had a pattern or practice of allowing unconstitutional conditions of confinement at the jail. Additionally, Bush is proceeding on a claim that Milwaukee County condoned a pattern or practice of ignoring inmate complaints about these conditions. On November 27, 2023, Milwaukee County filed a motion for summary judgment. Dkt. No. 140. For the reasons explained below, the Court will grant Milwaukee County's motion and dismiss this case.

## PRELIMINARY MATTERS

      Plaintiffs failed to comply with Fed. R. Civ. P. 11 despite repeatedly being notified of the rule's requirements. Specifically, on June 21, 2022, the Court informed Plaintiffs that under Rule 11(a) every filing must be signed by *all* Plaintiffs because they are proceeding without counsel and thus representing themselves. The Court warned them that, pursuant to the rule, the Court would strike any filing that is not signed by every plaintiff. The Court reiterated this warning on March

27 and August 15, 2023. The Court again notified Plaintiffs of this requirement on December 15, 2023, after Milwaukee County moved for summary judgment, explaining "that under Fed. R. Civ. P. 11, the Court must strike response materials that are not signed by both Plaintiffs." Dkt. No. 147.

Plaintiffs have also failed to comply with the local rules concerning summary judgment. On November 28, 2023, after Milwaukee County moved for summary judgment, the Court warned Plaintiffs that if they did not respond to Milwaukee County's proposed facts in accordance with Civil L. R. 56(b)(4), the Court would accept all facts asserted by Milwaukee County as undisputed. Dkt. No. 145. On February 5, 2024, Bush filed responses to Milwaukee County's proposed facts, but the filing was not signed by both Plaintiffs. Despite the Court's repeated warnings (as detailed above) Pattillo did not sign the responses. Accordingly, pursuant to Fed. R. Civ. P. 11(a), the Court must strike them. *See, e.g., Ghashiyah v. Frank*, No. 05-C-0766, 2008 WL 680203, at *3-5 (E.D. Wis. Mar. 10, 2008); *see also Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996) (explaining that *pro se* litigants do not have "unbridled license to disregard clearly communicated court orders," or to "choose which of the court's rules and orders [they] will follow, and which [they] will willfully disregard"). Further, Plaintiffs' failure to respond to Milwaukee County's proposed facts means the facts are deemed admitted for the purposes of deciding summary judgment. *See Phoneprasith v. Greff*, Case No. 21-3069, 2022 WL 1819043 (7th Cir. June 3, 2022) (holding that a district court is entitled to deem unopposed facts admitted under Civil L. R. 56(b)(4)); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (same).

With these considerations in mind, the Court turns to the substance of Milwaukee County's summary judgment motion.

## BACKGROUND

Plaintiffs are proceeding on *Monell* claims based on allegations that Milwaukee County consistently keeps the Jail in a state that is virtually uninhabitable, including serving spoiled food, denying inmates hygiene supplies, failing to address bug infestations, disabling toilets for long periods, failing to adequately heat cells, providing thin mattresses, and failing to provide proper medications. Further, Bush asserts that complaints about these conditions are frequently ignored. *See* Dkt. No. 103. The undisputed facts, however, paint a different picture of the conditions at the jail and of how jail staff respond to complaints about these conditions.

With regard to the food served at the jail, the evidence shows that Milwaukee County has a policy and practice of providing inmates with nutritionally adequate food that is prepared and served in a sanitary manner. Correctional officers' sole role is to provide inmates with prepackaged meals prepared by Aramark, which is not a Defendant. At Bush's request, he was placed on a cardiac diet. He never missed a meal while at the jail and would receive a bag lunch if his hot meal was not timely delivered. His primary complaint with his food is the lack of variety, although he admits that his meals had more variety towards the end of his stay at the jail. He also complains that his food was not very appetizing, sometimes looked freezer burned or overcooked, and contained apples and tomatoes, which upset his stomach. Dkt. No. 142 at ¶¶11, 38-51, 114-118.

The undisputed facts also establish that Milwaukee County has a policy and practice of providing inmates with cleaning supplies as well as sanitary living conditions. General population inmates must clean their cells before the dayroom is opened for the day. Inmates are provided with cleaning supplies, including a broom, dustpan, dust mop, cleaning spray, toilet bowl cleaner, and a wet mop. When there is a need for more significant cleaning, such as after flooding or blood on the floor following a fight, inmate workers are provided with disinfectant sprays, a water hose

3

with a power spray attachment, a water vacuum, and towels to clean and dry the impacted areas. Most flooding is cleaned up within thirty to forty-five minutes but always within three hours. Flooding incidents during the day are addressed more quickly because when flooding occurs in the middle of the night, the jail must page the on-call plumber. On-call plumbers always arrive within one hour of being called. Dkt. No. 142 at ¶¶58-70; 119-136.

With regard to Plaintiffs' concerns about their individual cell conditions, the undisputed facts establish that Milwaukee County contracts with a pest control company and has two bug-zapping machines between the dock and the kitchen. Bush admits he has seen someone spray for pests and that he saw only two cockroaches while at the jail and about one silverfish per month in his cell. Bush also acknowledges that, at his request, he was moved to a single cell, so he has not experienced the impact of overcrowding. Thermostats in the jail are set between 70 and 72 degrees. If a cell is too cold, staff provide additional blankets. Milwaukee County ensures that inmates receive at least one hour of recreation outside of their cells every twenty-four hours, during which they have access to a basketball court. Dkt. No. 142 at ¶¶55-56, 91-96, 106-108 137.

Sometimes when officers search a housing unit, the toilets are turned off to prevent inmates from flushing contraband. Toilets are never shut off other than during a search. Water may be turned off during a flooding event to limit the spread of water. Milwaukee County policy prohibits water being turned off for punitive purposes, and the County is not aware of any violations of this policy. On one occasion, jail staff had difficulty turning the toilets back on after the search was complete due to problems with the system. The issue was resolved within a day. Dkt. No. 142 at ¶¶72-79.

With regard to Plaintiffs' complaints about inadequate hygiene products and medication, the undisputed facts show that, once per week, inmates receive a bar of soap, a washcloth, a big

and small towel, a T-shirt, a smock, pants, and socks. Inmates may also buy soap at the canteen. Nurses pass out over-the-counter and prescription medications multiple times per day. Bush, who was prescribed medication before he was incarcerated, was given the option of having family members bring in his medication or of taking a generic version of the medication, which the jail provided. Milwaukee County explains that it contracts with Wellpath for healthcare services and jail staff does not provide healthcare to inmates. Jail staff play no role in decisions about inmate medications. Dkt. No. 142 at ¶¶17-30, 83-86.

Finally, the undisputed facts show that inmates can make requests and file grievances at the jail by using a small computer kiosk. If the kiosk is not functioning, inmates may use paper grievances. Inmates may also submit pink slips with medical requests or grievances about medical issues. Bush was able to use the kiosk while he was at the jail, and he submitted multiple grievances that were timely responded to. Milwaukee County has a practice and procedure of reviewing, investigating, and responding to inmate grievances in a timely manner. Dkt. No. 142 at ¶¶1-7; 111-112.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*,

5

612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Plaintiffs are proceeding on a *Monell* claim based on assertions that Milwaukee County has a custom or practice of creating and sustaining unconstitutional living conditions for pretrial detainees. Bush is also proceeding on a *Monell* claim based on assertions that Milwaukee County has a policy or practice of not investigating inmate complaints. *See* Dkt. No. 103 (citing *Monell v. Dep't Social Servs. of City of New York*, 436 U.S. 658 (1978) (holding that §1983 allows plaintiffs to sue municipalities for constitutional violations if the constitutional violation is the result of an unconstitutional municipal custom, policy, or practice)). Of course, for Milwaukee County to be liable under *Monell* for having a custom or practice of creating and sustaining unconstitutional living conditions Plaintiffs must first create a triable issue on whether the conditions at the jail were constitutionally problematic. Similarly, for Milwaukee County to be liable under *Monell* for condoning a custom or practice of not investigating inmate complaints, Bush must create a triable issue on whether his inmate complaints were ignored as he alleges. *See Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504-05 (7th Cir. 2010) (holding that the City could not be liable under *Monell* because there was no underlying constitutional violation). For the reasons explained below, Plaintiffs fail to create triable issues on the underlying constitutional violations, so Milwaukee County is entitled to summary judgment.

6

Plaintiffs were pretrial detainees at the relevant time, so their assertions that the conditions of their confinement at the jail violated the Constitution arise under the Fourteenth Amendment. To prevail on such a claim, Plaintiffs are required to demonstrate that "(1) the conditions in question are or were objectively serious . . .; (2) the defendant acted purposefully, knowingly, or recklessly with respect to the consequences of his actions; and (3) the defendant's actions were objectively unreasonable—that is, "not rationally related to a legitimate governmental objective or . . . excessive in relation to that purpose." *Hardeman v. Curran*, 933 F.3d 816, 821-22 (7th Cir. 2019). Plaintiffs stumble right out of the gate, as no jury could reasonably conclude that the conditions at the jail were objectively serious. The Seventh Circuit has explained that "conditions are not unconstitutional simply because they are harsh and restrictive. . . .; the Constitution does not mandate that prisons be comfortable." *Meriwether v. Faulkner*, 821 F.2d 408, 415 (7th Cir. 1987) (internal citation and quotation marks omitted). Moreover, while some conditions may establish a violation in combination when each would not do so alone, "this occurs only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Isby v. Brown*, 856 F.3d 508, 522 (7th Cir. 2017) (citations omitted).

The evidence shows that Plaintiffs were consistently provided with nutritionally adequate (if not varied or tasty) food, hygiene and cleaning supplies, clothes, and bedding. The evidence also shows that Bush saw a bug in his cell about once a month, inmate workers promptly addressed flooding and other significant cleaning needs, and an on-call plumber always responded within an hour of being called. Finally, the evidence shows that thermostats were kept at a reasonable temperature range, water to cells was never shut off for punitive purposes, toilets were turned off only temporarily during searches, inmates were provided with adequate medical care, including

medications, and inmates were allowed at least one hour per day (and often more) outside their cells for recreation.  Based on the record before the Court, no jury could reasonably conclude that the described conditions—taken on their own or in combination—were objectively serious.  *See Isby*, 856 F.3d at 522 (citing cases); *see Giles v. Godinez*, 914 F.3d 1040, 1052 (7th Cir. 2019) ("The core issue is whether the conditions deprived the plaintiff of a minimal civilized measure of life's necessities.").  Accordingly, because no jury could reasonably conclude that the jail conditions were constitutionally problematic, Milwaukee County is entitled to summary judgment on Plaintiffs' claim that it had a custom or practice of creating and sustaining unconstitutional conditions.

Bush's claim that Milwaukee County condones a custom or practice of not investigating inmate complaints fails for a similar reason.  The evidence shows that while incarcerated at the jail, Bush had access to a kiosk where he could submit inmate complaints.  The evidence also shows that Bush availed himself of the inmate complaint process multiple times while he was at the jail and that officers promptly responded to every inmate complaint he submitted.  Bush provides no evidence supporting a conclusion that the handling of his inmate complaints was objectively unreasonable.  *See, e.g., Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (suggesting that sending grievances to the shredder without reading them or intervening to prevent the delivery of medical care might be a ground for liability).  The mere fact that his inmate complaints may not have been resolved to his liking does not suggest that officers failed to investigate them.  *See id*. (holding that a complaint examiner who "carried out her job exactly as she was supposed to" did not violate the Constitution).  Accordingly, because no jury could reasonably conclude that the handling of Bush's inmate complaints was objectively unreasonable,

Milwaukee County is also entitled to summary judgment on his claim that it condones a custom or practice of ignoring or not investigating inmate complaints.

## CONCLUSION

For these reasons, Milwaukee County's motion for summary judgment (Dkt. No. 140) is **GRANTED** and this case is **DISMISSED**. The clerk of court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin on April 5, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Case 2:22-cv-00697-BHL   Filed 04/05/24   Page 9 of 9   Document 153